IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**TIMOTHY CHRIS LEYBA,**

    **Plaintiff,**

    vs.                                                       Civ. No. 16-1221 KK

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 11) filed March 24, 2017, in support of Plaintiff Timothy Chris Leyba's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and Title XVI supplemental security income benefits. On June 22, 2017, Plaintiff filed his Motion to Reverse and Remand Administrative Agency Decision and Memorandum Brief in Support of Motion to Reverse and Remand ("Motion"). (Doc. 17.) The Commissioner filed a Response in opposition on August 21, 2017 (Doc. 20), and Plaintiff filed a Reply on August 30, 2017. (Doc. 22.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 4, 6, 8.)

## I. Background and Procedural Record

Claimant Timothy Chris Leyba ("Mr. Leyba") alleges that he became disabled on December 1, 2007, at the age of thirty-seven because of right knee impairment, left shoulder [pain], and right hip [pain]. (Tr. 407, 414.[3]) Mr. Leyba completed the tenth grade in 1986,[4] and worked as a carpenter/framer, pizza maker, survey rodman, and service technician. (Tr. 225, 408, 418.) Mr. Leyba reported he stopped working on December 1, 2007, due to his medical conditions. (Tr. 407.)

On August 23, 2010, Mr. Leyba protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. (Tr. 356-62, 433.) He also filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 350-55.) Mr. Leyba's applications were initially denied on January 1, 2011. (Tr. 150-51, 152, 179-83.) They were denied again at reconsideration on April 13, 2011. (Tr. 153-54, 155, 185-87, 188-91.) On June 18, 2011, Mr. Leyba requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 192.) ALJ Barbara Perkins conducted a hearing on October 18, 2012. (Tr. 113-149.) Mr. Leyba appeared in person at the hearing without representation. (*Id.*) When Mr. Leyba did not receive a decision from ALJ Perkins, the Administration scheduled a second hearing. (Tr. 231-39.) ALJ James Burke conducted a second hearing on August 20, 2013. (Tr. 105-12.) Mr. Leyba appeared in person without representation. (*Id.*) ALJ Burke encouraged Mr. Leyba to retain a lawyer and Mr. Leyba agreed to do so. (Tr. 111.) On August 28, 2013, Mr. Leyba retained Attorney Donald Vigil. (Tr. 247-48.) Pursuant to Mr. Vigil's request, the Administration

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 11) that was lodged with the Court on March 24, 2017.

[4] Ms. Leyba testified at the first administrative hearing that he completed the ninth grade (Tr. 120); he testified at the third administrative hearing that he completed the eighth grade and was in special education (Tr. 69).

scheduled a third hearing. (Tr. 255-61.) ALJ Myriam C. Rice conducted the third hearing on January 14, 2014. (Tr. 65-104.) Mr. Leyba appeared in person and was represented by Attorney Donald Vigil.[5] (*Id.*) The ALJ took testimony from Mr. Leyba (Tr. 64-87), and an impartial vocational expert ("VE"), Judith Beard (Tr. 87-99). On February 11, 2014, ALJ Rice issued an unfavorable decision. (Tr. 156-69.) On August 10, 2015, the Appeals Council issued an Order remanding the case to the ALJ because the jobs the ALJ identified at step five exceeded Mr. Leyba's manipulative limitations. (Tr. 176-78.) The ALJ was ordered, upon remand, to "give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations," and to obtain supplemental evidence from the VE to clarify the effect of the assessment limitations on the claimant's occupational base. (*Id.*) ALJ Rice conducted a fourth hearing on October 13, 2015. (Tr. 53-64.) Mr. Leyba failed to appear, although Attorney Vigil was present. (*Id.*) The ALJ took testimony from an impartial VE, Pamela Bowman. (Tr. 57-63.) The ALJ issued an Order to Show Cause for Failure to Appear and explained to Mr. Leyba that he had to demonstrate good cause if he wished to have a supplemental hearing before the ALJ. (Tr. 344-45.) On October 20, 2015, Mr. Leyba responded and explained that he was homeless and between friends' homes in Albuquerque and Colorado. (Tr. 349.) ALJ Rice did not find good cause to schedule a supplemental hearing and proceeded with her determination.[6] (Tr. 36.) On January 28, 2016, ALJ Rice issued an unfavorable decision. (Tr. 33-46.) On September 6, 2016, the Appeals Council issued its decision denying Mr. Leyba's request for

---

[5] Mr. Leyba is represented in these proceedings by Attorney Michael Armstrong. (Tr. 32.)

[6] The ALJ also stated she considered Mr. Leyba's request for an orthopaedic consultative examination before holding another hearing (Tr. 304), but that she determined an additional consultative examination was not necessary. (Tr. 36.)

3

review and upholding the ALJ's final decision. (Tr. 1-5.) On November 8, 2016, Mr. Leyba timely filed a Complaint seeking judicial review of the Commissioner's final decision. (Doc. 1.)

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[7] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*,

---

[7] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B. **Standard of Review**

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004);

*Casias,* 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

### III. Analysis

The ALJ made his decision that Mr. Leyba was not disabled at step five of the sequential evaluation. (Tr. 44-45.) Specifically, the ALJ determined that Mr. Leyba met the insured status requirements of the Social Security Act through June 30, 2012,[8] and that Mr. Leyba had not engaged in substantial gainful activity since December 1, 2007. (Tr. 38.) She found that Mr. Leyba had severe impairments of chronic right knee ACL tear and chondromalacia, left clavicular fracture with malunion and left shoulder impingement. (Tr. 39.) The ALJ, however, determined that Mr. Leyba's impairments did not meet or equal in severity any of the listings described in Appendix 1 of the regulations. (*Id.*) As a result, the ALJ proceeded to step four and

---

[8] To receive Title II benefits, a claimant must demonstrate disability prior to his date of last insured. *See Potter v. Sec'y of Health & Human Servs*., 905 F.2d 1346, 1347 (10th Cir. 1990).

6

found that Mr. Leyba had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that

> he is limited to never climbing ladders, ropes or scaffolds, occasional kneeling and crawling, and occasional overhead reaching with the left arm. He is further limited to jobs that can be performed while using a hand held assistive device for only uneven terrain or prolonged period of ambulation and must avoid concentrated exposure to extreme cold.

(Tr. 39-44.) The ALJ further concluded at step four that Mr. Leyba was unable to perform any past relevant work. (Tr. 44.) The ALJ determined at step five based on Mr. Leyba's age, education, work experience, RFC, and the testimony of the VE, that there were jobs existing in significant numbers in the national economy that Mr. Leyba could perform. (Tr. 44-45.) As a result, the ALJ determined that Mr. Leyba was not disabled. (Tr. 46.)

In support of his Motion, Mr. Leyba argues that (1) the Appeals Council erroneously determined that the evidence submitted by Mr. Leyba was not chronologically pertinent; (2) ALJ Rice failed to provide specific and legitimate reasons for discrediting the opinion of treating physician Levi Maes, M.D.; (3) ALJ Rice's RFC does not include a function-by-function assessment; and (4) ALJ Rice's step five finding is not supported by substantial evidence because the VE testimony regarding the number of jobs in the national economy is not reliable. (Doc. 17 at 12-22.) For the reasons discussed below, the Court finds that the Appeals Council erred in finding the new evidence submitted was not chronologically pertinent. Therefore, this case requires remand.

**Consideration of Additional Evidence**

On April 16, 2016, John R. Vigil, M.D., performed an independent medical evaluation and functional evaluation of Mr. Leyba for disability. (Tr. 15-27.) Dr. Vigil reviewed

Mr. Leyba's medical records from New Mexico Orthopedics,[9] X-Ray Associates of Santa Fe,[10] Wayne Auge II, M.D.,[11] Richard Cook, PA-C,[12] Richard Kennedy, M.D.,[13] and the University of New Mexico Hospital.[14] (Tr. 16.) Mr. Leyba reported suffering multiple and various accidents and traumas throughout his life, both at work and recreationally, resulting in multiple broken bones, including his left clavicle, thumbs and ribs, and a serious right knee injury. (*Id*.) As a result, Mr. Leyba reported complaints of chronic neck pain, left shoulder pain, bilateral knee pain, right hip pain, lower back pain, and depression and anxiety. (Tr. 16-17.) He stated that his

---

[9] On January 26, 2007, Mr. Leyba presented to Dr. Douglas C. Allen and reported a history of left clavicle fracture and continuing pain. (Tr. 518.) Dr. Allen assessed left clavicle fracture. (*Id.*) On April 9, 2007, Mr. Leyba presented to Dr. Kari M. Babinski with complaints of right knee pain. (Tr. 513-15.) Mr. Leyba reported a knee injury six years prior, and that now his knee was giving out in cold weather and that he was experiencing increased pain. (*Id.*) Radiologic studies demonstrated a right knee anterior cruciate ligament tear and possible medial meniscal tear. (*Id.*)

[10] On April 10, 2007, MRI findings of Mr. Leyba's right knee demonstrated, *inter alia*, extensive abnormal medial meniscus with evidence of displaced meniscal fragment, complete tear of the anterior cruciate ligament, horizontal tear in the anterior horn of the lateral meniscus, cartilage defect along the main weight-bearing portion of the medial femoral condyle, and small joint effusion and very small popliteal cyst. (Tr. 516-17.) On October 26, 2007, MRI findings of Mr. Leyba's left shoulder demonstrated, *inter alia*, bursal sided partial tear of the rotator cuff, subacromial subdeltoid bursitis, and clavicle deformity consistent with fracture and possible nonunion. (Tr. 519.) On May 12, 2009, MRI findings of Mr. Leyba's left shoulder demonstrated worsening tendinopathy of the supraspinatus and infraspinatus tendons, bursal or articular surface tear, mild adhesive capsulitis and/or injury of the rotator interval, and posttraumatic deformity of the distal clavicle. (Tr. 558-59.)

[11] On October 25, 2007, Dr. Auge diagnosed left shoulder impingement syndrome posttraumatic, and left shoulder clavicle malunion. (Tr. 580.) On November 6, 2007, Dr. Ague noted that the MRI scan indicated some partial tearing of the left rotator cuff. (Tr. 572.)

[12] On June 4, 2007, Mr. Leyba saw Dr. Cook for left shoulder pain and possible rotator cuff injury. (Tr. 586-87.)

[13] On November 20, 2010, State agency examining medical consultant Richard Kennedy, M.D., performed a physical exam of Mr. Leyba. (Tr. 600-02.) Mr. Leyba reported difficulty with his right knee, right hip, and left shoulder. (*Id.*) He reported swelling, pain and stiffness in his right knee and that he has a "popping sensation." (*Id.*) Mr. Leyba reported using a knee brace and occasionally using a walking stick. (*Id.*) Dr. Kennedy assessed that Mr. Leyba's medical impairments would impose moderate limitations in his ability to do work-related physical activities. (*Id.*)

[14] On April 19, 2012, Mr. Leyba presented to UNM – Clinic Ortho and saw Carina Pierce, PA-C. (Tr. 679-81.) Mr. Leyba reported right knee pain and instability. (*Id.*) Mr. Leyba reported his knee was painful all the time and gives out, and that cold weather makes it worse. (*Id.*) PA-C Pierce noted that MRI findings demonstrated an ACL tear, a flipped medial meniscus tear, and condylar defects of both medial and lateral compartments. (*Id.*) PA-C Pierce indicated she wanted to refer Mr. Leyba for possible surgical options. (*Id.*)

pain was aching, burning and sharp, and that he experienced it constantly and daily. (Tr. 17.) Mr. Leyba further stated that any activity and cold weather aggravated his pain. (*Id.*)

Mr. Leyba also reported having been subjected to significant trauma during his life, including a drive-by shooting and a life-threatening motorcycle accident. (Tr. 16.) He complained of intrusive thoughts, nightmares, insomnia, hypervigilance, negative affect, mood swings, avoidant behavior, and difficulty concentrating and remembering. (*Id.*) Mr. Leyba stated that the people in his neighborhood were trying to harm or poison him, and that they were pouring some sort of substance in his yard that was affecting his body. (*Id.*)

Dr. Vigil completed a review of systems and performed a physical exam. (Tr. 17-19.) Dr. Vigil assessed (1) chronic neck pain, DDD and spondylosis; (2) chronic bilateral knee pain, bilateral DJD; (3) chronic tear, full-thickness, ACL, chronic tear right medial meniscus; (4) chronic left shoulder pain, chronic rotator cuff tendinitis with capsulitis and tendinosis; (5) chronic right hip pain; (6) multiple recurrent joint pains, polyarthralgia; (7) depression and anxiety and probable PTSD; and (8) delusional disorder, NOS. (Tr. 19-20.) Dr. Vigil concluded that Mr. Leyba had severe functional limitations and was severely limited in both vocational and avocational activities secondary to his chronic conditions. (Tr. 20.) Dr. Vigil also concluded that Mr. Leyba had significant depression which was currently not well controlled and would benefit from a psychiatric evaluation and treatment for his depression, anxiety and probable PTSD which were also significantly contributing to his inability to work. (*Id.*)

Dr. Vigil completed a number of assessments on Mr. Leyba's behalf including (1) Medical Assessment of Ability to Do Work-Related Activities (Mental) (from a year prior to initial visit to current examination);[15] (2) Listing 12.04 Affective Disorders; (3) Listing 12.06

---

[15] Dr. Vigil assessed that due to severe PTSD and delusional disorder with anger outburst, Mr. Leyba had, *inter alia*, *marked* limitations in his ability to (1) maintain concentration for extended periods of time; (2) perform activities

9

Anxiety-Related Disorders; (4) Medical Assessment of Ability to Do Work-Related Activities (Physical) (from 2009 to current examination);[16] (5) Medical Assessment of Ability to do Work-Related Activities (Non-Physical) (from 2009 to current examination);[17] and (6) Medical Assessment of Musculoskeletal System.[18] (Tr. 21-27.)

On July 29, 2016, Attorney Armstrong submitted Dr. Vigil's assessments to the Appeals Council for its consideration. (Tr. 14.) On review, the Appeals Council stated that

> [w]e looked at the medical records from John R. Vigil, M.D. dated April 16, 2016 (16 pages). The Administrative Law Judge decided your case through January 28, 2016. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 28, 2016.

(Tr. 2.) Mr. Leyba argues that the Appeals Council erred in determining that the new evidence was not chronologically relevant. (Doc. 17 at 12-15.) Mr. Leyba further argues that Dr. Vigil's medical assessments met all the criteria for the Appeals Council's consideration in his request for review; *i.e.,* the evidence was new because it was not duplicative or cumulative; it was material

---

within a schedule, maintain regular attendance and be punctual within customary tolerance; (3) work in coordination with/or proximity to others without being distracted by them; (4) complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 21-22.)

[16] Dr. Vigil assessed that due to Mr. Leyba's severe bilateral knee pain, left shoulder pain, left rotator cuff syndrome, neck pain, and degenerative joint disease, that Mr. Leyba could occasionally and frequently lift less than five pounds, could stand and/or walk less than 2 hours in an 8-hour workday, could sit for less than 4 hours in an 8-hour workday, must periodically alternate sitting and standing to relieve pain and discomfort, had limited push and/or pull in his upper and lower extremities, could do no overhead lifting with his left arm, could never kneel or crawl, and could occasionally stoop and crouch. (Tr. 25.)

[17] Dr. Vigil assessed that due to severe physical and psychological problems that Mr. Leyba had, *inter alia*, *marked* limitations in his ability (1) to maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently (*i.e.,* 2-hour segments), (2) to work in coordination with/or proximity to others without being distracted by them; and (3) to complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 26.)

[18] Dr. Vigil assessed that Mr. Leyba met the criteria for Listing 1.02 *Major Dysfunction of a Joint(s) (due to any cause)*, and that Mr. Leyba would not have the ability to sustain a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living or to walk a block at a reasonable pace on rough or uneven surfaces or to carry out routine ambulatory activities, such as shopping and banking. (Tr. 27.)

because there was a reasonable possibility it could change the outcome of the ALJ's determination; and it was related to the relevant period of time because it addressed dates before the ALJ's determination. (*Id.*) The Commissioner contends that the evidence, even if time relevant, is not material because Dr. Vigil's assessments address psychiatric conditions which were not an issue during the relevant period of time, and that although the forms asked Dr. Vigil to consider Mr. Leyba's medical history from 2009 to current examination, they did not ask Dr. Vigil to describe Mr. Leyba's limitations retrospectively. (Doc. 20 at 18-19.) The Commissioner further contends that even if the Court were to determine that the new evidence is time relevant, that the Court should assess the evidence before remanding because it is not reliable and would not change the outcome. (*Id.* at 19-20.)

The Appeals Council will grant review of a case if, *inter alia*, "the claimant submits additional evidence that is new, material, and related to the period on or before the date of the ALJ decision." 20 C.F.R. §§ 404.970(b) and 416.1470(b) *see also Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (holding that under 20 C.F.R. §§ 404.970(b) and 416.1470(b) the Appeals Council must consider evidence submitted with a request for review if it is new, material, and related to the period on or before the date of the ALJ's decision). This means the evidence is:

1. Not part of the claim(s) record as of the date of the ALJ decision;

2. Relevant, *i.e.*, involves or is directly related to issues adjudicated by the ALJ; and

3. Relates to the period on or before the date of the hearing decision, meaning it is (1) dated before or on the date of the ALJ decision, or (2) post-dates the ALJ decision but is reasonably related to the time period adjudicated by the ALJ.

**NOTE 1:** The AC does not apply a strict deadline when determining if post-dated evidence relates to the period at issue. There are

> circumstances when evidence dated after the ALJ decision relates to the period at issue. For example, a statement may relate to the period at issue when it postdates the decision but makes a direct reference to the time period adjudicated by the ALJ. This may be especially important in a claim involving a date last insured (DLI) where a statement from a treating source dated after an ALJ decision specifically addresses the time period before the DLI.

Commissioner's Hearings, Appeals and Litigation Manual ("HALLEX") I-3-3-6(B); *see also Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (affirming that evidence is new if it is not duplicative or cumulative, and is material if there is a reasonable possibility it could change the outcome). The Tenth Circuit has repeatedly held that whether evidence is "new, material and chronologically pertinent is a question of law subject to our *de novo* review." *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011) (quoting *Threet*, 353 F.3d at 1191) (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

> If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. If the evidence does qualify and the Appeals Council considered it "in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.

*Chambers*, 389 F.3d at 1142 (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)). "[O]ur general rule of *de novo* review permits us to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Krauser*, 638 F.3d at 1328 (citing *Chambers*, 389 F.3d at 1142). Thus, the question before the Court -- *i.e.,* whether the Appeals Council should have considered the medical source statements in Mr. Leyba's request for review -- is one of law subject to the Court's *de novo* review. *Threet*, 353 F.3d at 1191. And, although the Appeals Council rejected the newly submitted evidence on the ground that it was not related to the relevant time period, the Court addresses all three criteria as part of its review.

Dr. Vigil's medical source statements are new evidence. "Evidence is new within the meaning of [404.970(b) and 416.1470(b)] if it is not duplicative or cumulative." *Threet*, 353 F.3d at 1191 (citations omitted). Dr. Vigil's assessments were not available to the ALJ at the time she made her decision. For this reason, the evidence is neither duplicative nor cumulative and is considered new.

Dr. Vigil's medical source statements are material. Evidence is material to the determination of disability "if there is a reasonable possibility that [it] would have changed the outcome." *Threet,* 353 F.3d at 1191 (citations omitted). Here, the ALJ relied, in part, on the opinions of State agency nonexamining medical consultants Mark A. Werner, M.D., and Allen Gelinas, M.D.,[19] the opinion of State agency examining medical consultant Richard Kenney, M.D.,[20] and the opinion of treating physician Levi Maes, M.D.[21] (Tr. 42-43.) However, Dr. Vigil's assessments call into question the ALJ's RFC assessment because, if adopted, they would impose greater limitations on Mr. Leyba's abilities to do work-related physical *and* mental activities.[22] For these reasons, this evidence is material.

---

[19] Drs. Werner and Gelinas assessed that Mr. Leyba was capable of light exertional work with certain postural and manipulative limitations. (Tr. 603-10, 618.) The ALJ accorded their opinions "some weight," and found that Mr. Leyba was "more limited to using hand held assistive device for only uneven terrain or prolonged periods of ambulation and must avoid concentrated exposure to extreme cold." (Tr. 43.)

[20] Dr. Kenney did not provide a function-by-function assessment, but concluded generally that Mr. Leyba's right knee, right hip, and left shoulder impairments would impose moderate functional limitations on his ability to do work-related physical activities. (Tr. 600-02.) The ALJ accorded Dr. Kenney's opinion "some weight," and found that it was generally consistent with a range of light work with postural limitations. (Tr. 42.)

[21] Dr. Maes assessed that Mr. Leyba could lift and/or carry 20 lbs. occasionally and 10 lbs. frequently; that he could stand and/or walk for less than 2 hours in an 8-hour workday; that his sitting was unlimited; that he had no limitations for overhead reaching, handling of objects, traveling, fine manipulation with hands/fingers, speaking or hearing; and that he had no nonexertional limitations. (Tr. 667-68.) Dr. Maes also assessed that Mr. Leyba's impairments were more likely to result in "bad" days than "good," that Mr. Leyba could not perform full time work on a regular basis, and that his pain and symptoms were severe enough to interfere with the attention and concentration needed to perform even simple tasks. (*Id*.) The ALJ accorded Dr. Maes's opinion "some weight," but found that his opinion regarding Mr. Leyba's ability to work full time and having constant pain severe enough to interfere with his attention and concentration "sharply contrasts with the other evidence of record." (Tr. 43.)

[22] The ALJ did not impose any nonexertional limitations.

Finally, Dr. Vigil's assessments relate to the period at issue. It is undisputed that the date on which Dr. Vigil completed the assessments post-date the ALJ's decision. However, the medical source statements make a direct reference to the time period adjudicated by the ALJ; *i.e.,* "from a year prior to initial visit to current examination" and "from 2009 to current examination."[23] (*Id.*) *See* HALLEX I-3-3-6(B) (noting that there are circumstances when evidence dated after the ALJ decision relates to the period at issue, such as when a statement makes a direct reference to the time period adjudicated). Moreover, the assessments directly relate to (1) Mr. Leyba's right knee impairment as evidenced by his reports and testimony, as well as multiple MRIs and healthcare provider diagnoses during the relevant period of time (Tr. 70, 80-82, 108, 129-30, 403, 407, 440, 443, 513-15, 516-17, 600-02, 632, 634, 659, 660-62, 667-68, 679-81); (2) Mr. Leyba's left shoulder impairment as evidenced by his reports and testimony, and by multiple MRIs and healthcare provider diagnoses during the relevant period of time (Tr. 69, 83, 108, 129-30, 403, 407, 440, 443, 518, 519, 557, 558-59, 574, 580, 586-87, 600-02, 634, 667-68); (3) his right hip pain as evidenced by his reports and complaints to healthcare providers during the relevant period of time (Tr. 407, 443, 600-02, 634); (4) his left knee pain as evidenced by his testimony during the relevant period of time (Tr. 82); (5) his joint pain and stiffness as evidenced by his disability report on appeal and his reports to healthcare providers during the relevant period of time (Tr. 450, 634); and (6) his depression and anxiety as evidenced by his disability report on appeal during the relevant period of time (Tr. 450). *See Padilla v. Colvin*, 525 F. App'x 710 (10th Cir. 2013) (unpublished)[24] (finding that new evidence was temporally

---

[23] The adjudicated period is December 1, 2007, the alleged onset date (Tr. 414), through January 28, 2016, the date of the ALJ's determination (Tr. 33-46).

[24] Unpublished decisions are not binding precedent in the Tenth Circuit, but may be cited for their persuasive value. *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005).

14

relevant when corroborated by evidence during the relevant period of time). Additionally, Dr. Vigil's assessment of Mr. Leyba's ability to do work-related physical activities, although not identical to Dr. Maes's opinion, nonetheless corroborates Dr. Maes's more restrictive assessment regarding Mr. Leyba's ability to stand and/or walk, and that Mr. Leyba's pain and other symptoms were severe enough to interfere with the attention and concentration needed to perform even simple tasks. (Tr. 668-69.) There is no evidence that the Appeals Council considered these circumstances when it determined whether to consider the additional evidence, as they were required to do. *Id.* Instead, the Appeals Council applied a strict deadline and determined that the evidence did not relate to the relevant time period because the medical source statements were dated after the ALJ's decision. This is reversible error.

The Commissioner argues, however, that even if the Court were to find that the medical source statements were chronologically relevant that they would not undermine the ALJ's decision. (Doc. 20 at 19-20.) The Commissioner, therefore, asks the Court to assess the new evidence in light of the record before remanding. (*Id.*) In *Vallejo v. Berryhill*, 849 F.3d 951 (10th Cir. 2017), the Tenth Circuit held that when a claimant submits new evidence to the Appeals Council *and the Appeals Council accepts and considers it*, that evidence becomes a part of the record to be considered by the court in performing a substantial-evidence review. *Id.* at 955 (emphasis added). That is not the case here. In this case, the Appeals Council *did not accept or consider* the new evidence in denying Mr. Leyba's request to review the ALJ's decision. (Tr. 2.) Thus, the only question before the Court is whether the Appeals Council should have done so. *See Padilla,* 525 F. App'x at 712, n. 1 (distinguishing the questions before the court when the Appeals Council rejects and does not consider additional evidence in denying review and when the Appeals Council accepts and considers evidence in denying review).

Because the Appeals Council did not accept or consider the new evidence and should have, it would be improper for this Court to perform a substantial-evidence review of the ALJ's decision by evaluating new evidence that was rejected below.

### IV. <u>Conclusion</u>

For the reasons stated above, Mr. Leyba's Motion to Reverse and Remand For a Rehearing With Supporting Memorandum (Doc. 17) is **GRANTED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**